SORENSON v. CHARLEVOIX ROCK PRODUCT CO.

1. PRINCIPAL AND AGENT—COMMISSIONS—SALES.
   Where plaintiff brought an action for commissions that he claimed to have earned in selling stocks and bonds, and the evidence was in conflict relative to the terms of his contract, defendant claiming that he was only to receive pay for such deals as were actually closed by plaintiff, who testified that his agreement provided for commissions on such sales as he caused by introducing prospective buyers, the trial court was correct in leaving the question of liability to the jury.

2. SAME—TRIAL—INSTRUCTIONS.
   There was no ground for reversal because the trial court refused defendant's requests for instructions that plaintiff could not recover, that he had not shown that either alone, or by the aid of any other person, he had sold any stock; that in order to recover he must establish either that he sold some 'of the capital stock owned by defendant or that he, with others working with him, sold stock belonging to the defendant for which he received no commission, and that plaintiff would not be entitled to any

commission for sales made by any other person or persons after he left defendant's employ.

3. SAME—DECLARATION—BILL OF PARTICULARS.

Defendant, not having demanded of plaintiff a bill of particulars, could not, on the ground that the special count in the plaintiff's declaration merely related to bonds, prevent a recovery for stock sold which was open to plaintiff under the count for work and labor of the common counts declared on.

4. SAME—CONTRACT—CONSTRUCTION.

Nor was the defendant entitled to the instruction that plaintiff could not recover for commissions on sales of stock to persons whom he introduced and to whom sales were made after he left defendant's employ.

5. SAME—RIGHT TO COMPENSATION.

And even though stock belonging to individual officers or agents was transferred to the prospective customers, defendant could not evade liability on that basis.

Error to Wayne; Hally, J. Submitted January 10, 1916. (Docket No. 74.) Decided March 31, 1916.

Assumpsit by Charles Sorenson against the Charlevoix Rock Product Company, a corporation, for broker's commissions. Judgment for plaintiff. Defendant brings error. Affirmed.

*Fred H. Aldrich* and *Walter M. Trevor,* for appellant.

*James H. Pound,* for appellee.

STONE, C. J. This is an action of assumpsit to recover for commissions claimed to have been earned by the plaintiff on sale of stock and bonds for the defendant. The declaration contained a special count to the effect that defendant, through its proper officers, entered into an agreement with the plaintiff, in February, 1911, whereby he was to act as its solicitor for the purpose of securing purchasers of the stock and

bonds of the said corporation, and it agreed to pay to said plaintiff a commission of 20 per cent. on any stock of the said defendant company sold to any person or persons introduced to, or brought in communication with, the officers or agents of the defendant by or through the efforts of the plaintiff. It was further alleged that whereas, prior to October 16, 1911, the plaintiff introduced to and brought the officers and agents of defendant into communication with certain persons therein named, for the purpose of interesting said persons in the purchase of stock and bonds of the said defendant company, and whereas thereafter the defendant, through its officers and agents, did sell to said persons 2,300 shares of stock in said defendant company, receiving therefor a valuable consideration, and whereas the par value of said stock is $10 per share, there was due to the plaintiff the sum of $2 for each and every share of said stock sold by defendant, through its officers and agents, to said named persons as aforesaid, which had not been paid although demand had been made for same, etc. There were also added the usual common counts, including the count for work and labor done and performed by plaintiff for defendant. The plea was the general issue. Upon the trial there was a sharp conflict, between the plaintiff and defendant, in the evidence as to what the contract was between the plaintiff, and E. L. Buell, the secretary and treasurer of the defendant. There was no claim made by the defendant upon the trial that Buell exceeded his authority as an officer, or that he was not authorized by the defendant to make any contract which he did make with the plaintiff; and, as stated by the trial court in its charge to the jury:

"You have an issue, and that is, was a contract made as the plaintiff says it was?"

The plaintiff testified, among other things, that he first met Mr. Buell in connection with said matter at

the office of the defendant, 610 Majestic Building, Detroit, on February 26, 1911. He testified that Mr. Buell had before that time sent him a letter, and that he called to see him in response to that letter. Plaintiff testified:

"I went up and asked what kind of a proposition he had, and he said, 'I would like you to go to work for the Standard Lime & Cement Company.' At that time it was called the Standard Lime & Cement Company, but was afterwards changed to the Charlevoix Rock Product Company. I said I would be glad to go to work for them, and asked him on what condition."

A letter seems to have been here introduced in evidence and marked as an exhibit. It is a peculiarity of this record that, while it refers to many exhibits, not one of them is set out, and we are unable to know what any of them contained.

The plaintiff continued his testimony:

"Mr. Buell wanted me to go to work for the Standard Lime & Cement Company, that was later the Charlevoix Rock Product Company, and I asked him how much it was, and he said that he would give me 15 per cent. on all bonds sold and a bonus of 50 per cent. that I could either keep for myself or give to the customers. That I gave to the customers. I thought they were more entitled to it than I was; and he would give me 20 per cent. of the stock sold and 40 per cent. at par. Stock was then selling at 50 per cent.; that was $5 a share."

He then testified that he started out and commenced to work for the defendant. It was conceded, during the trial of the case, that the Charlevoix Rock Product Company and the Standard Cement and Lime Company were one and the same company; the name having been changed. The witness testified at great length about the work which he did in selling stocks and bonds, and he testified that, in a subsequent conversa-

tion with Mr. Buell, one I. N. Aldrich was referred to by Mr. Buell as a good "closer." He testified:

"I got acquainted with Mr. Aldrich through Mr. Buell. Mr. Buell told me that he had been interested with him in the Marengo Cement Company, of Marengo, Indiana; that he was a quick closer and could close up quicker than I could, and for me to look after the prospects, and I would get my 20 per cent. commission anyhow. Mr. Aldrich would close them up for me, and I could pay Mr. Aldrich 5 per cent. on my commission that I would get from Mr. Buell."

Then he proceeded to testify to numerous deals in which Mr. Aldrich became interested, and gave testimony generally in support of the declaration. We gather from the plaintiff's testimony, generally, that he does not claim that he ever, personally, closed the sale of any stock with any of the persons that he interviewed, but that he brought to the office and introduced such persons, who were taken charge of either by Mr. Aldrich or Mr. Buell, and that sales were consummated. He does claim, however, and testified to having sold some of the bonds of the defendant company.

On behalf of the defendant, Mr. Buell testified that the plaintiff never made a sale of stock for the defendant and was never paid any money by the defendant at any time; that what stock he did sell, or assist in selling, was private stock belonging to individuals; and he denied that he had any agreement or arrangement with reference to Mr. Aldrich, as testified to by plaintiff, he claiming that the persons, or solicitors who closed the transactions, were the ones who were entitled to the commissions. On his direct examination, after testifying to his connection with the defendant company, he said:

"Sorenson first began to sell the stock of the Charlevoix Rock Product Company in the latter part of February, 1911. He worked for the company until about the first of November, the same year.

"*Q.* Did he have any contract with the company?

"*A.* No, sir; I paid Sorenson for the commissions upon the sales of any business that he did."

Upon cross-examination, his attention being called to a letter, apparently the one about which plaintiff had testified, the following occurred:

"*Q.* Now, calling your attention to this letter that is dated October 20, 1910:

" 'Mr. Charles Sorenson,

" 'No. 916 Bellevue Avenue,

" 'Detroit—

" 'My Dear Mr. Sorenson:

" 'You will remember the writer having had some talk with you regarding a cement proposition at Charlevoix, Michigan. We now have our bonds ready and are in a position to pay a good liberal cash commission, as well as 50 per cent. stock bonus.'

"Now, who was 'we'?

"*A.* It is the company.

"*Q.* What company?

"*A.* The Charlevoix Rock Product Company.

"*Q.* Now, when you said, 'we have a proposition,' you meant the company had?

"*A.* Yes, sir.

"*Q.* Well, in response to this (indicating), Mr. Sorenson at some time did come in to see you?

"*A.* Yes, sir.

"*Q.* Did you tell him, 'I want to hire you for myself,' then, yes or no?

"*A.* No, sir.

"*Q.* Did you tell him who you did want to hire him for?

"*A.* Yes, sir.

"*Q.* Who did you say you wanted to hire him for?

"*A.* I wanted him to sell bonds for the Standard Cement & Lime Company; that is now the Charlevoix Rock Product Company. We fully decided not to make the cement, and changed the name.

"*Q.* At any rate, 'We now have our bonds ready and are in a position to pay a good liberal commission as well as a 50 per cent. stock bonus'?

"*A.* Yes, sir; that is what we paid him for all he sold.

"*Q.* That is, you paid him a cash commission?

"*A.* Yes, sir.

"*Q.* A 50 per cent. stock bonus?

"*A.* Yes, sir; allowed that.

"*Q.* All right, you don't call that a contract?

"*A.* No, sir; that is not a contract.  *  *  *

"*Q.* Now, then, you did agree for the company to give Mr. Sorenson 15 per cent. on the sale of bonds?

"*A.* Yes, sir.

"*Q.* Did you agree with him to give him 20 per cent. on the sale of stock?

"*A.* Yes, sir.

"*Q.* Did you agree that in case any of the stock was sold at par that there was 40 per cent. due him?

"*A.* I explained that.

"*Q.* Yes or no to that question.

"*A.* No, sir; the company never paid only 20 per cent.

"*Q.* How soon after the sending of that letter, that I called your attention to, did you see Mr. Sorenson?

"*A.* I could not say. It was some little time after that he came in.

"*Q.* Well, was it answered in person?

"*A.* Yes, sir.  *  *  *

"*Q.* Well, as a matter of fact, as I understand your testimony to Mr. Trevor, the only thing that Mr. Sorenson did was to sell two bonds for the Charlevoix Rock Product Company?

"*A.* Yes, sir.

"*Q.* To Mrs. Emig, and I think to Mr. Martin? If he sold bonds for the price that the company wanted, then the 50 per cent. of stock was his?

"*A.* It was an option to use the stock as he saw fit.  *  *  *

"*Q.* So that he never sold—Mr. Sorenson never sold a share himself from your standpoint, and was entitled to no compensation for a share of stock while he was in the Charlevoix Rock Product Company?

"*A.* No, sir."

For the bonds sold, about which there seems to be

no question, the witness testified that he paid the plaintiff by his own personal check; he saying:

"I paid him out of my own personal check book. The company settled with me.  *  *  *

"*Q.* Isn't it a fact that you told Sorenson that any person that he got, that bought stock or bonds, that the commission was his, no matter who closed it?

"*A.* No, sir; I never told him that."

There was further testimony of the same character, and the plaintiff testified in rebuttal that his contract was never changed.

The case was submitted to the jury by the trial court in a very clear charge, in which the court, among other things, used the following language:

"It is the claim of the plaintiff here that some time in the year 1911 he entered into the employment of the defendant, the Charlevoix Rock Product Company, at that time known by a different name, and that the terms of the contract he entered into were these: That he was to sell the stock, or the bonds of the company; that on the sale of stock he was to get 20 per cent.; that on the sale of bonds he was to get 15 per cent.; that he was to sell the stock at $5 per share; and that he further claims that if he sold at par he was to get 40 per cent.; that he was to use his endeavors to interest parties in this proposition; that, having gotten them very thoroughly interested in the proposition, he was then to report his prospects as probable purchasers to the company and the 'closer-in,' or somebody with more experience or more knowledge of the affairs of the company, was to go forth and close the transaction; but that he was, nevertheless, to receive the commission for the same for the work that he had done in leading the prospective purchaser that far in the transaction.

"Now, that is the contract in brief words, that the plaintiff claims was made; that is the understanding the plaintiff claims he had when he entered into the work. Now, if you find that such an understanding was reached, of course, that sort of an understanding would constitute a contract. Now, the defendant says

that such was not the case at all, that the terms of the employment were different from what the plaintiff says the terms were, and that the man was not engaged either as to the terms or manner in which he claims he was engaged, and that as to each different transaction a full understanding was had with respect to each particular transaction. Now, it is for you to say whether the plaintiff has maintained his case, or whether the defendant has satisfied you that the situation was as defendant claims it was. (If you find that plaintiff was engaged as the plaintiff claims he was engaged, and that as a result of his labor stocks or bonds were sold, whether those stocks or bonds were out of the treasury of the company or of some person else, if the sale of them resulted from his having reported them to a superior, and the superior officer having taken advantage of his work and sold to the purchaser a different piece of property from the piece of property that the plaintiff had been attempting to sell, the plaintiff, nevertheless, would be entitled to compensation which the contract said he should receive for that particular sale.) Now, in giving you this kind of a statement, do not misunderstand me. I am not finding any facts for you; I am not saying that the officer of the company did the things; I am saying, if you find that to be so, then certain results would follow. It is for you to say whether or not that particular thing did happen, because the testimony with respect to that has been placed before you. You have seen the parties upon the witness stand."

The jury returned a verdict for the plaintiff in the sum of $851.40, and judgment was entered thereon.

At the close of the plaintiff's evidence, and again at the close of all the evidence, the defendant moved the court for a directed verdict in its favor, upon the ground that there was no evidence before the jury that showed any liability on the part of the defendant; that, taking the plaintiff's own testimony that he sold some bonds or stock, there was no testimony that he sold any stock that the defendant ever got a dollar for. The defendant also requested the court to charge the jury as follows: (1) That under the proofs in the

case the plaintiff could not recover. (2) That the plaintiff had not shown that either alone, or by the aid of any other person, he sold any of the stock of the defendant for it, and is not entitled to recover. (3) That in order for plaintiff to recover a verdict it was necessary for him to show either that he sold some of the capital stock of the defendant owned by it, or that he, together with others working with him for that purpose, sold capital stock of defendant belonging to it, for which he did not receive any commission. (4) The plaintiff would not be entitled to any commission for any sales of stock made to any person or persons after he left the employment of the company.

There was a motion for a new trial entered by the defendant based upon the following grounds:

(*a*) Because the verdict was contrary to the evidence. (*b*) Because there was no testimony to sustain the verdict. (*c*) Because the proofs introduced showed that the plaintiff performed no services for the said defendant for which he was entitled to any compensation under the pleadings and evidence in said cause. (*d*) Because the proofs in said cause show that, if any services were performed by said plaintiff for any person whomsoever in relation to the capital stock of the defendant, such services were performed for Elbert L. Buell, and not for the defendant. (*e*) Because the proofs in said cause show that plaintiff did not sell any capital stock issued for the defendant, but that, if he had anything to do whatever with the sale of such capital stock, it belonged to private parties and not to the defendant. (*f*) Because the proofs in said cause show that Elbert L. Buell paid the plaintiff in cash for all services performed by him for any person in the sale of the capital stock issued by the defendant. (*g*) Because, under any view of the facts shown in the evidence, the verdict rendered in said cause was excessive. (*h*) Because the verdict in said cause was contrary to law. (*i*) Because the verdict in said cause was contrary to the instructions upon the law as given to said jury in open court. (*j*) Because the court erred in refusing to direct a verdict in said cause in

favor of defendant at the close of the evidence therein offered by the plaintiff, also at the close of the testimony in the case.

The court in denying the motion for a new trial used the following language:

"Briefly, the facts are that the plaintiff was employed to work for the Rock Product Company. The man who hired him was authorized to effect that sort of an agency. Under the terms of this employment, all prospective buyers discovered by him brought a certain commission to him, even though the sale was actually brought about by some other. It appeared that some sales were made subsequently, but it was the defendant's claim that this stock was not the stock of the company, but was the stock owned by the agent who had hired Sorenson. Plaintiff was never, according to his testimony, acquainted with the difference in the ownership of the stock. His testimony was to the effect that he assumed that his work regarding it was no different from his work respecting other stock. The whole matter was distinctively a question of fact —rather various questions of fact, and I do not see how the defendant could justify itself by putting in a position of trust with power to employ agents, an officer, and then excuse itself for paying a commission on the sale of an agent's personal property when the seller was not apprised of the difference in the ownership of the property he was selling. Under the theory of the plaintiff as presented to the jury, it would have been possible for a verdict much in excess of this amount to have been returned, and the motion for a new trial will be denied."

The defendant duly excepted to the reasons given by the trial court in overruling the motion for a new trial, and has brought the case here upon writ of error.

The first eight assignments of error relate to the rulings of the court upon the admission of testimony. We have read the record with care, and are of opinion that there was no reversible error in the rulings of the court upon that subject. We do not think the assign-

ments or error upon those rulings present a meritorious question.

The remaining assignments of error, beginning with the ninth, relate to:

(1) The court's refusal to direct a verdict for the defendant; (2) the refusal to grant defendant's several requests to charge; (3) the court's misstatement of the alleged contract; (4) the erroneous statement by the court of the plaintiff's theory of his contract to the utter exclusion of the defendant's theory; (5) the court's denying of defendant's motion for a new trial.

1. As we have already indicated, in our opinion there was such a conflict in the evidence of the respective parties that a question of fact was raised for the consideration of the jury as to what the contract was. In our opinion, the court did not err in refusing to direct a verdict for the defendant.

2. We find no error in the refusal of the court to give defendant's requests above referred to.

The first, second, and third requests to charge contained no merit for the reason, already stated, that a question of fact was presented for the jury. Defendant claims that the third request to charge raises the point that plaintiff could not recover for sale of bonds, because there is no such claim in the declaration. Such evidence was competent and relevant under the count for work and labor. No bill of particulars of plaintiff's claim was demanded in so far as the record shows.

The fourth request to charge was properly refused, because if the jury believed the claim of the plaintiff he was entitled to commissions for sales to persons whom he brought to, and introduced to, the officers of the defendant, and whether a sale of stock was actually made before or after he left the employment of defendant would be a matter of no importance.

3. The third and fourth points of defendant's position may be considered together. We have set forth so much of the charge as purports to contain the substance of the contract claimed by the plaintiff and the claim of the defendant relating thereto. We find no error in the charge, and are of opinion that the trial court was correct when it gave that portion of the charge embraced in parenthesis, to which the twelfth assignment of error refers. If the plaintiff was correct in his claim that he was hired by the defendant, through its secretary and treasurer, to sell stocks and bonds of the defendant, or to introduce prospective purchasers to the defendant where sales were consummated, as claimed by plaintiff, we do not think the defendant could escape liability by substituting stock or bonds of individuals, where the plaintiff had in good faith negotiated for the sale of the stocks or bonds of the defendant company, as claimed by him.

Lastly, we think that the trial court's denial of defendant's motion for a new trial was not erroneous, for the reasons given by the trial court.

We have examined this entire record with care and find no reversible error therein.

The judgment of the court below is therefore affirmed.

KUHN, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.